UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Rajshun Bernard Foster,<br><br>   Petitioner,<br><br>v.<br><br>Curtis Earley as Warden of Perry Correctional Institution,<br><br>   Respondent. | Civil Action No. 5:24-7113-RMG<br><br>**ORDER** |

  This habeas petition comes before the Court on a Report and Recommendation (R & R) of the Magistrate Judge recommending that Respondent's motion for summary judgment (Dkt. No. 17) be granted.  Petitioner has filed objections to the R & R and Respondent has filed a reply. (Dkt. Nos. 38, 39).  For reasons set forth below, the Court adopts the R & R of the Magistrate Judge and grants summary judgment to Respondent.

## Legal Standards

### A. Report and Recommendation

  The Magistrate Judge makes only a recommendation to this Court.  The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the Court.  *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).  The Court is charged with making a de novo determination of those portions of the R & R to which specific objections have been made.  Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations of the Magistrate Judge.  28 U.S.C. § 636(b)(1).

### B.     Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### C.     Habeas Corpus

#### 1.     Standard for Relief

Claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as decided by the Supreme Court of the United States," or the

decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2).  Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443  U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also White v. Woodall*, 572 U.S. 415, 419–20 (2014) (stating "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (quoting *Harrington*, 562 U.S. at 103)).

Therefore, when reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000); *see also White*, 572 U.S. at 419 (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and providing that "even clear error will not suffice" (internal quotation marks and citation omitted)).  Moreover, review of a state court decision does not require an opinion from the state court explaining its reasoning. *See Harrington*, 562 U.S. at 98 (finding "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court).  If no explanation accompanies the state court's decision, a federal habeas petitioner must show that

3

there was no reasonable basis for the state court to deny relief. *Id.* Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. *Id.* at 102. In addition, state court's factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. § 2254(e)(1).

### 2. Procedural Default

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011); *see also In re Exhaustion of State Remedies in Criminal & Post-Conviction Relief Cases*, 321 S.C. 563, 471 S.E.2d 454, 564 (1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies"). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted).

Generally, a federal habeas court should not review the merits of claims procedurally defaulted (or barred) under independent and adequate state procedural rules. *See Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and

4

actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" occurs where there is a reasonable probability that the result of the proceeding would have been different. *See Mazzell v. Evatt*, 88 F. 3d 263, 269 (4th Cir. 1996). A "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of someone who is actually innocent[.]" *Murray*, 477 U.S. at 496.

### 3.     Ineffective Assistance of Counsel

When claiming habeas relief due to ineffective assistance of counsel at trial, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that, but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 104. This is a high standard, one in which a habeas petitioner alleging prejudice must show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would have been "reasonably likely" different but for counsel's error is not dispositive of the "prejudice inquiry." Rather, the Court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104–05; *Strickland*, 466 U.S. at 694.

The Supreme Court has cautioned that while "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" difficult. *Id.* In such circumstances, the "question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.*

Courts are reluctant to characterize tactical or strategic decisions by trial counsel as ineffective assistance. *See Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). A "strong presumption" exists that counsel's actions were the function of trial tactics and not "sheer neglect." *Harrington*, 562 U.S. at 109 (internal quotation marks and citation omitted). This rule, however, is not absolute where the purported strategic decision is based upon an error or ignorance of the law by trial counsel. *See e.g.*, *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (omissions based upon "oversight, carelessness, ineptitude or laziness" cannot be explained as "trial strategy"); *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007) (a strategic choice made without a professionally competent investigation of the Petitioner's options is "erected upon . . . a rotten foundation" and is not entitled to deference).

## **Background**

Petitioner was convicted of murder in the Cherokee County Court of General Sessions after a jury trial on July 15-17, 2019. Petitioner was given a 35-year sentence by the state trial judge. Petitioner filed an appeal, challenging the trial court's charge that the jury could infer malice from the use of a deadly weapon. The South Carolina Court of Appeals affirmed Petitioner's conviction

6

on February 9, 2022, finding that Petitioner had failed to object to the jury charge at trial and had not preserved the issue. *State v. Foster*, 2022 WL 390049 (S.C. App. 2022).

Petitioner thereafter filed an application for post-conviction relief (PCR) on April 14, 2022. He based his petition on ineffective assistance of counsel. Petitioner asserted in his PCR application that he was denied effective assistance of counsel because trial counsel failed to object to the jury instruction regarding implied malice from the use of a deadly weapon and failed to conduct adequate trial preparation.

The PCR court conducted a hearing on October 18, 2022 and issued an order on March 21, 2023 denying relief. (Dkt. No. 36-3 at 162-84). The PCR court made the following findings:

1. Several witnesses testified that on the days prior to the shooting of the victim, Timothy Blair (Blair), Petitioner and his co-defendant, Franklin Dover (Dover), were looking for the victim because they believed he had stolen either money or drugs from them. (*Id.* at 163).

2. Earlier on the day of the death of the victim, Petitioner and Dover confronted Blair, with eyewitnesses describing the Petitioner as the instigator. (*Id.*).

3. Petitioner, Dover and two others drove to the complex where the victim lived on the day of the murder. Petitioner was driving the car and drove up a nearby paved road. Petitioner dropped Dover and another man off a wooded path that led to the back of the complex and directly to the back door of the apartment of the victim's girlfriend. When Dover got out of the vehicle, he was carrying a loaded rifle and wearing a mask and a pair of surgical gloves. Dover then laid in wait for the victim, armed with a loaded rifle. (*Id.* at 164).

4. After dropping Dover off, Petitioner returned to the parking lot and again confronted the victim. The victim walked away and reported to a friend that he feared for his life. (*Id*. at 165).

5. The State produced phone records at trial showing that between the time Dover was dropped off near the residence of the victim's girlfriend and prior to the shooting, Dover called the Petitioner three times on his cell phone. (*Id*.).

6. As the victim was heading back to his girlfriend's residence, he rounded a corner and Dover was waiting for him with the rifle in hand. Dover shot the victim once in the chest, killing him. The victim was unarmed. (*Id*.).

7. After shooting the victim, Dover called Petitioner, and Petitioner picked Dover up at the same location he had dropped him off. Dover told Petitioner "get me out of here fast." Petitioner asked Dover where he shot the victim, and he responded "in the chest area." (*Id*. at 166).

8. "The State relied on accomplice liability [i.e. 'the hand of one is the hand of all'] to prove [Petitioner's] guilt because he drove Dover to the scene, knew what Dover was going to do, was complicit and aided and abetted in the murder, and then picked up Dover after the murder." (*Id*. at 167).

The PCR court rejected Petitioner's claim of ineffective assistance of counsel because he failed to object to the jury instruction that malice could be inferred from the co-defendant's use of a firearm. The PCR court noted that after Petitioner's conviction, the South Carolina Supreme Court ruled in *State v. Burdette*, 832 S.E.2d 575, 582-83 (S.C. 2019) that malice could not be inferred because a defendant used a deadly weapon, overturning *State v. Belcher*, 685 S.E.2d 892 (S.C. 2009), "which permitted a implied malice instruction so long as there was no evidence of mitigating circumstances presented." (*Id.* at 178-79). The PCR court found that the charge given

8

at Petitioner's trial on implied malice was appropriate at the time and that trial counsel is not required "to be clairvoyant or anticipate changes in the law which were not existent at the time of trial." (*Id*. at 178) (*citing Gilmore v. State*, 445 S.E.2d 454, 457 (S.C. 1994) (overruled on other grounds by *Brigham v. State*, 336 S.C. 348 (1999)). The PCR court further found that any alleged error was harmless, noting that "there was overwhelming evidence of malice and a premeditated plot to kill or wound Victim." (*Id*. at 182).

The PCR court further rejected Petitioner's claim of inadequate trial preparation. The PCR court specifically addressed allegations that trial counsel was ineffective for failure to prepare a trial defense, to review discovery, and to hire a private investigator. The PCR court found that trial counsel's "approach at trial was reasonable" and the Petitioner's contention that his attorney did not review discovery "not credible." (Dkt. No. 174-75). In regard to the claim of ineffective assistance due to counsel not hiring a private investigator, the PCR court rejected that argument, finding that Petitioner "failed to show what evidence, if any, the investigator would have uncovered or how it would have impacted the results at trial." (*Id.* at 175).

Petitioner thereafter filed an appeal of the PCR court's denial of relief to the South Carolina Supreme Court. The Supreme Court referred the matter to the South Carolina Court of Appeals, which denied review of the PCR court's decision on October 9, 2024, making the PCR court's decision final. (Dkt. No. 16-7).

Petitioner filed his habeas petition to this Court on December 9, 2024, asserting that he was denied effective assistance of counsel because his trial attorney failed to object to the jury charge for implied malice from the use of a deadly weapon and failed to perform adequate trial preparation. (Dkt. No. 1). The matter was referred to a Magistrate Judge for pretrial handling. The Respondent thereafter moved for summary judgment. (Dkt. No. 17). The Magistrate Judge issued

9

a Report and Recommendation on January 13, 2026, recommending that summary judgment be granted to the Respondent. Petitioner filed objections to the R & R and Respondent filed a response. (Dkt. No. 38, 39). The matter is now fully briefed and ripe for disposition.

## Discussion

The Court below addresses each objection asserted by Petitioner:

A. <u>Objection One: The Magistrate Judge erred in finding that the trial counsel's failure to object to the malice instruction was not deficient performance</u>.

Petitioner argues that at the time of his trial the use of a jury charge in which a jury could infer malice from the use of a firearm in commission of the crime was "disfavored" and the "clear trajectory in South Carolina jurisprudence" was to bar the use the charge under any circumstances. (Dkt. No. 38 at 2-3). Thus, Petitioner argues, trial counsel's failure to object to the proposed charge constituted ineffective assistance of counsel. The PCR court found that the "charge given at [Petitioner's] trial was appropriate at the time and this fact was recognized on direct appeal by the [Petitioner] himself." (Dkt. No. 36-3 at 179).

It is well settled that in addressing a challenge under 28 U.S.C. § 2254 to the performance of trial counsel, the petitioner must show that the state court decision was "contrary to, or involved an unreasonable application of clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1),(2). Additionally, under the *Strickland* standard, for any claim of ineffective assistance of counsel to prevail, the petitioner must show that the trial counsel's performance fell below an objective standard of reasonableness and there was a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. The application of the highly deferential standard of review under § 2254 and *Strickland*

"in tandem" makes establishing a meritorious claim of ineffective assistance of counsel "doubly" more difficult. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The Magistrate Judge found that Petitioner could not satisfy the *Strickland* standard that the PCR court's finding that trial counsel was not ineffective in failing to object to the trial court's jury charge on malice, noting that *State v. Burdette* was not decided at the time of Petitioner's trial. The Magistrate Judge cited the Fourth Circuit's decision in *Lenz v. Washington*, 444 F.3d 295, 307 (4th Cir. 2006), which held that "an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law." The Court finds that Petitioner cannot meet the standards of § 2254 and *Strickland* for demonstrating ineffective assistance of counsel and overrules Petitioner's objection.

> B. <u>Objection Two: The Magistrate Judge erred in finding that Petitioner was not prejudiced by trial counsel's failure to object to the malice charge</u>.

Petitioner objects to the Magistrate Judge's finding that there was not a substantial likelihood that the outcome of the trial would have been different had the malice charge not been given. Petitioner contends that in a circumstantial evidence case such as this matter, the alleged error of the trial counsel not to object to the malice charge was "particularly prejudicial" and the lack of a lesser included offense made the alleged error even more prejudicial. (Dkt. No. 38 at 5-7). Petitioner further argues that the overwhelming evidence of malice referenced by the PCR court actually applied to Dover and not Petitioner. (*Id*. at 7-8).

The PCR court rejected Petitioner's prejudice argument, finding that the any alleged error was harmless because the "there was overwhelming evidence of malice and a premediated plot to kill or wound Victim." (Dkt. No. 36-3 at 179-182). The PCR court found that Petitioner "drove Dover to the scene, knew what Dover was going to do, was complicit and aided and abetted in the murder, and then picked up Dover after the murder." (*Id*. at 167).

11

The Magistrate Judge found that there was not "a substantial likelihood that the result of Petitioner's trial would have been different had the trial court not given the jury charge on implied malice." (Dkt. No. 37 at 18). Further, the Magistrate Judge found that "the PCR court's findings are supported by the record, and Petitioner has failed to overcome the doubly deferential standard of review accorded the state court's determination of this issue of ineffective assistance of counsel under *Harrington*. Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law, or, even if there was an error, that it was unreasonable." (*Id*.). The Court fully concurs with the Magistrate Judge's findings and conclusions and overrules this objection.

    C. <u>Objection Three: The Magistrate Judge erred in finding trial counsel's trial preparation was adequate.</u>

Petitioner contends that trial counsel's preparation was inadequate, arguing that trial counsel met with Petitioner "only seven times," failed to hire a private investigator, and presented "no coherent defense beyond arguing that the State had not met its burden of proof." (Dkt. No. 38 at 8-9).

The PCR court found trial counsel's "approach at trial was reasonable. Applicant failed to present an alternative defense that would have changed the result at trial." (Dkt. No. 36-3 at 174). In regard to Petitioner's claim that trial counsel did not communicate with him "enough," the PCR court found that Petitioner "failed to establish how additional communication would have resulted in a different outcome at trial." (*Id.* at 172). The PCR court rejected the claim that trial counsel was ineffective for not hiring a private investigator because Petitioner "failed to show what evidence, if any, the investigator would have uncovered or how it would have impacted the results at trial." (*Id.* at 175).

The Magistrate Judge found that Petitioner had "failed to present sufficient evidence to show that the State courts' rejection of his investigation and trial defense claims were contrary to, or involved an unreasonable application of, clearly established federal law." (Dkt. No. 37 at 21). The Magistrate Judge further found that "the PCR court reasonably found Petitioner was not prejudiced by his counsel's performance." (*Id.*). The Magistrate Judge further agreed with the PCR court "that Petitioner failed to identify any new evidence or information that would have changed the outcome at trial." (*Id.*). The Court fully agrees with the Magistrate Judge's findings and overrules this objection.

## Certificate of Appealability

The governing law provides:

> (c)(2) A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of constitutional right.
>
> (c)(3) The certificate of appealability ... shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253; *see also* Rule 1(b) Governing Section 2254 Cases in the United States District Courts ("The district court may apply any or all of these rules to a habeas corpus petition not covered by [28 U.S.C. § 2254].") A prisoner satisfies the standard by demonstrating that reasonable jurists would find the Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). Here, the legal standard for the issuance of a certificate of appealability has not been met because a reasonable jurist would not find it debatable that Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a Certificate of Appealability is denied.

## Conclusion

Based on the foregoing, the Court **ADOPTS** the R & R as the order of the Court, **GRANTS** Respondent's motion for summary judgment (Dkt. No. 17) and **DENIES** a certificate of appealability.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

February 24, 2026
Charleston, South Carolina